IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SEANG WANG,

        Plaintiff,                      No. CIV S-05-0792 FCD PAN

    vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.              <u>FINDINGS & RECOMMENDATIONS</u>

_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under XVI of the Social Security Act ("Act").  For the reasons discussed below, the court recommends plaintiff's motion for summary judgment or remand be denied and the Commissioner's cross-motion for summary judgment be granted.

/////

/////

/////

/////

/////

I. Factual and Procedural Background

In a decision dated April 27, 2004, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. The ALJ found plaintiff has severe impairments of right shoulder pain and headaches, but that these impairments do not meet or medically equal a listed impairment; plaintiff's testimony is not substantially credible; plaintiff has the residual functional capacity to perform the physical exertion requirements of work, except for prolonged lifting in excess of 25 pounds and occasional lifting in excess of 50 pounds; plaintiff has the residual functional capacity to perform the full range of medium work; plaintiff is able to perform his past

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

relevant work as a fast food worker, carpet cleaner, and in-home support service care giver; and plaintiff is not disabled. Administrative Transcript ("AT") 593-94. Plaintiff contends that the ALJ erred in his determination that several of plaintiff's mental impairments were not severe; that the ALJ's assessment of plaintiff's residual functional capacity was erroneous; and that the ALJ erred in his determination of plaintiff's credibility.

II. Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)). The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/////

III. <u>Analysis</u>

   a. <u>The ALJ Properly Determined that Plaintiff's Mental Impairment, Dizziness, and Stomach Pain were not Severe.</u>

The ALJ found plaintiff to suffer from the severe impairments of right shoulder pain and headaches. AT 593. The ALJ did not find plaintiff's complaints of mental impairments, dizziness, and stomach pain to be severe. <u>Id</u>. This finding was not in error.

In reaching his conclusions that plaintiff's mental impairment, dizziness, and stomach pain were not severe, the ALJ relied upon the medical evidence available during this period of disability. The ALJ applied the doctrine of res judicata in declining to reopen the prior period of adjudication. See <u>Krumpelman v. Heckler</u>, 76 F.2d 586 (9th Cir. 1985), *cert. denied*, 475 U.S. 1025, 106 S.Ct. 1222. 89 L.Ed.2d 332 (1986). Plaintiff makes no claim that the ALJ erred in his finding that plaintiff's current period of disability began on August 16, 2002, the date of plaintiff's prior application became final and binding,[2] and a refusal to reopen an earlier period is generally not subject to judicial review. <u>Id.</u> In addition, while evidence taken prior to the period of disability is discussed in the ALJ's findings, the court does not find that this constitutes any de facto consideration of plaintiff's prior adjudication sufficient to permit review. <u>Id.</u> at 589; <u>see also</u> <u>Lewis v. Apfel</u>, 236 F.3d 503, 510 (9th Cir. 2001)(finding court's consideration of evidence of disability from 1989 and onset date of 1990 resulted in defacto opening of denied 1991 application).

Plaintiff made numerous complaints about his physical and mental condition in his application for benefits. AT 636. At his hearing, plaintiff's physical complaints included

---

[2] The ALJ erred in his finding that plaintiff did not file a request for review following denial of his claim by the ALJ on August 16, 2002. The record shows that plaintiff did in fact file a timely request on September 4, 2002, AT 14, that was denied by the Appeals Council on October 31, 2003, AT 7. The District upheld the Commissioner's denial on September 1, 2005 and plaintiff appealed to the 9th Circuit on September 29, 2005.

4

chest pain, AT 810, shoulder pain, AT 811, back pain, AT 812, tremors, AT 813, numbness in his legs, id., and stomach pain and diarrhea, AT 814. His mental impairments focused primarily upon his depression, AT 810, manifested through lack of concentration, id., dizziness, id., AT 812, poor sleep, AT 815, and flashbacks of combat relating to his service during the Vietnam War, id..

        The ALJ found plaintiff's mental impairment to be not severe. In reaching this conclusion, the ALJ found it significant that the record contained few objective clinical findings to support plaintiff's complaints. AT 592. The ALJ's decision noted multiple medical opinions in the record that often reported minimal and well-controlled, and occasionally nonexistent, mental symptoms. AT 592-93. In addition, the ALJ noted favorable response of plaintiff's condition to medication. AT 592. Based upon this evidence, the ALJ found that plaintiff did not have a severe mental impairment.

        An impairment is not severe only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR 85-28. The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987). "The step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater 80 F.3d 1273, 1290 (9th Cir. 1996).

        The ALJ correctly determined that plaintiff's mild depression was a nonsevere impairment. See Saelee, 94 F.3d at 522. The medical record during the period of evaluation contains evidence of eight separate appointments with mental health providers. AT 757-58, 795-801. In addition, on at least one occasion, plaintiff reported to his physician during a physical examination that he was experiencing depression. AT 754 (November 12, 2002). While eight appointments and one additional report is more than the "very occasional" evidence of treatment noted by the ALJ, AT 592, none of the episodes of treatment contain sufficient evidence of

impairment to disturb the conclusions of the ALJ. See Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)(upholding the opinion of the ALJ must be upheld when evidence is susceptible to more than one rational interpretation). Plaintiff's reports to his treating mental health provider at Visions Unlimited were consistently positive. AT 795 (October 20, 2003, "doing quite well"); AT 796 (July 28, 2003, "doing alright"); AT 797 (June 9, 2003, "doing alright"); AT 800 (April 14, 2003, "doing fine"); AT 801 (February 24, 2003, "doing all right"); AT 757 (December 30, 2002, "doing alright"). These positive assessments came even on the two occasions that plaintiff complained of auditory hallucinations, AT 800, and thoughts of suicide and erratic sleep patterns, AT 801. Plaintiff reported depression during these visits; however, since April 14, 2003, none of his treating doctors felt any need to change or alter plaintiff's medication or treatment. The most recent treatment notes in plaintiff's medical record consistently found his dress, hygiene, speech and affect to be good and did not report any complaints of suicidal ideation or poor sleep.

     This consistent record of positive findings by plaintiff's treating physicians matched the assessment completed by the State Agency who did not find that plaintiff suffered from any severe mental impairment. In all functional areas, including restrictions on activities of daily living, difficulties in maintain social functioning, and difficulties maintaining concentration, persistence, or pace, the State Agency opined that plaintiff's restrictions were only mild. AT 790. Such mild limitations cannot be considered severe impairments. 20 C.F.R. 416.920a(d)(1).

     The medical record contains no evidence of objective clinical findings or "medically acceptable clinical diagnostic techniques" that support a finding of severe impairment. Social Security Regulation (SSR) 96-4p("In claims where there are no medical signs of laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step 2 of the sequential analysis.") Furthermore, the conclusions of the doctors at Visions Unlimited rest entirely upon

the complaints of plaintiff. These complaints comprise symptoms that may form part of the basis for establishing an impairment when they are seen in conjunction with medically acceptable signs or laboratory findings. Id.; see also 20 C.F.R. § 404.1508, 416.908. However, such subjective complaints standing on their own do not support a finding of severe impairment. See Ukolov v. Barnhart, 420 F.3d 1002, 1006 (9th Cir. 2005); see also SSR 96-4p("[r]egardless of how many symptoms an individual alleges, or how genuine the individual's complaints appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities").

Despite plaintiff's contention, the ALJ made the necessary findings regarding each of the functional areas affecting plaintiff's mental limitations. 20 C.F.R. § 416.920a(e)(2). While not expressly documenting each category of functional limitation, the ALJ's finding that plaintiff's mental impairment was nonsevere and his implicit reliance on the findings of the State Agency confirms that the ALJ considered plaintiff's impairments to be at or below the mild level and therefore less than severe. In addition, the ALJ expressly stated that plaintiff suffered from no nonexertional limitations. AT 593. Nonexertional limitations are non-strength related limitations, including mental limitations. Desrosiers, 846 F.2d at 573; 20 C.F.R., Pt. 404, Subpt. P, Appendix 2, § 200.00(e).

The ALJ's reliance on the opinion of the nontreating, nonexamining physicians with the State Agency was not in error. Reliance on the medical opinion of a nontreating, nonexamining physician can amount to substantial evidence when supported by other evidence in the record. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989). Such corroborative evidence exists in this case.[3]

As discussed in detail below, the ALJ found plaintiff to be not credible. AT 592. This finding had natural consequences for the medical conclusions of plaintiff's treating

---

[3]

physicians that were based solely on plaintiff's subjective complaints. The treatment notes from Visions Unlimited shows a consistent reliance upon plaintiff's subjective symptoms. AT 592. As noted by the ALJ, there is no evidence in the record to show that plaintiff's treating physicians performed any objective tests or diagnostic procedures prior to reaching their conclusions about plaintiff's impairments. AT 592.

Credibility determinations do factor into evaluations of medical evidence. Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005); see e.g. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004). When there are legitimate reasons to doubt a plaintiff's complaints, the opinions upon which those complaints are based are also questionable. See Morgan, 169 F.3d at 602 ("A physical opinion of disability 'premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" (quoting Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989))). There are legitimate reasons to doubt plaintiff's credibility in this case.

As explained above, there is a lack of objective medical evidence to support the full extent of plaintiff's allegations of impairment. Furthermore, the record shows a marked inconsistency between the nature of plaintiff's daily activities and his complaints. Each of these factors casts doubt upon all of plaintiff's complaints and upon the medical opinions that relied upon plaintiff's subjective reporting. For the ALJ to look past these opinions in favor of those offered by a nonexamining doctor with the State Agency was not in error.

Furthermore, the record establishes that plaintiff functioned at a level that was inconsistent with a severe mental impairment. Despite claims to the contrary, the record establishes that plaintiff was capable of attending to his needs; walking, driving, shopping, lifting and carrying, performing yard work, maintaining appointments and interacting with family without any apparent difficulty. AT 762-63. Such factors, in light of the lack of objective medical evidence to support many of plaintiff's complaints, cast significant doubt upon any

/////

finding that plaintiff suffers from a severe mental impairment, and are a proper basis upon which to discount any medical opinion of plaintiff's treating physicians that might suggest otherwise.

Finally, it is not apparent from the record that plaintiff's treating doctors at Visions Unlimited offered any opinion that differed from that of the State Agency. At no point in the medical record did they offer any statement about the extent of plaintiff's impairment. Furthermore, as noted above, their diagnoses remained static once plaintiff ceased reporting significant problems. In addition, none of the myriad treating physicians felt the need to move beyond the conservative treatment used to address plaintiff's mental impairments and employ a more aggressive protocol.

Given the lack of any clear dispute in the medical opinions in this case, the ALJ need only offer "clear and convincing" reasons for rejecting a treating doctor's opinion, assuming that one is even offered. Lester, 81 F.3d at 831. Assuming the Visions Unlimited doctors' opinions do contradict those of the State Agency, "specific and legitimate" reasons must be proffered by the ALJ to justify their rejection. Lester, 81 F.3d at 830. Under either standard, the ALJ has met his burden and his reliance upon the corroborated opinion of the State Agency was not in error.

Just as plaintiff's complaints of severe mental impairment are not supported by the evidence in the record, there is a similar lack of evidence supporting plaintiff's complaints of severe stomach pain and dizziness. During the relevant period of alleged disability, plaintiff complained only once of dizziness. AT 722. There is no record of any treatment in response to this complaint. Furthermore, during plaintiff's appointments with his mental health providers at Visions Unlimited, he made no complaints of dizziness. AT 757-58, 795-801. Given the nearly nonexistent evidence in the medical record, the ALJ's determination that plaintiff's dizziness was not severe was not an abuse of discretion.

In relation to his single complaint of dizziness, plaintiff complained three times as often to his doctors about stomach pain or dyspepsia. AT 722, 754, 755. However, doctors'

responses to plaintiff complaints of stomach pain mirrored those made in response to his complaints of dizziness as the record fails to document any significant treatment or therapy in response to plaintiff's concerns. Plaintiff was diagnosed with peptic ulcer disease (PUD) and prescribed medications designed to treat acid reflux. AT 754. There is no indication that any doctor felt the need to order testing in response to the complaints of pain as they had done in response to plaintiff's complaints of heart and chest pain, AT 730, nor did they impose any significant limitations upon plaintiff's activities. The paucity of evidence supports the ALJ's conclusion that plaintiff's stomach pain was not severe.[4]

The ALJ evaluated all of the relevant medical evidence in reaching his findings. After a careful review of that evidence, the ALJ's finding that plaintiff's depression, dizziness, and stomach problems were not severe was not in error. The ALJ's determination should not be disturbed.

b. <u>The ALJ's Assessment of Plaintiff's Residual Functional Capacity was not in Error.</u>

The ALJ found plaintiff capable of performing work at the medium exertion level. AT 593. In this regard, the ALJ found plaintiff able to lift up to 25 pounds frequently and 50 pounds occasionally. <u>Id.</u> This finding was not in error.

Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner for assessing residual functional capacity. SSR 96-8p. Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); <u>see</u> <u>also</u> <u>Valencia v. Heckler</u>, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). Assessment of residual functional capacity is based upon all relevant medical and other evidence. 20 C.F.R. 416.945(a)(3).

---

[4] Plaintiff raises an additional argument that the ALJ erred by refusing to find plaintiff's headaches to be a severe impairment. This claim is misplaced. In his findings, the ALJ stated that "the medical evidence establishes that [plaintiff] has severe...headaches." AT 593.

1    Medium work is defined as "work involv[ing] lifting no more than 50 pounds at a
2 time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §
3 404.1567(c).  In reaching his determination that plaintiff was capable of medium work, the ALJ
4 relied upon the medical evidence in the record.  AT 592.  In addition, the ALJ relied upon other
5 evidence of a non-medical nature.  Id.  Furthermore, the ALJ's conclusion is consistent with the
6 opinion of the State Agency that plaintiff is capable of medium work.
7    Prior to reaching his determination of residual functional capacity, the ALJ
8 correctly noted the lack of medical evidence to support plaintiff's complaints.  Id.  The ALJ's
9 analysis of the medical evidence fails to document any impairment that precludes plaintiff's
10 ability to do medium work.  Furthermore, observations made by investigators of plaintiff's
11 everyday activities, including walking, driving, shopping, lifting, mowing the lawn, and
12 interacting with family, support the ALJ's finding.  See 20 C.F.R. § 416.945(a)(3)("We will also
13 consider descriptions and observations of your limitations from your impairment(s),...provided
14 by,...other persons.")
15    State Agency doctors found plaintiff capable of performing medium work.  The
16 State Agency reviewed plaintiff's entire record, 20 C.F.R.§§ 404.1513(c), 416.913(c), which
17 included complaints of dyspepsia and other general stomach ailments such as PUD, as well as
18 depression, suicidal ideation, dizziness, worriness, lack of concentration, chest pain, and a lack of
19 strength.  AT 636.  There is no evidence that the State Agency doctor improperly limited his
20 analysis and subsequent conclusions solely to plaintiff complaints of dyspepsia.  Given the
21 complaints of stomach problems contained in plaintiff's application as well as in his medical
22 record in the months leading up to the State Agency evaluation, AT 722, 755, it cannot be said
23 that the State Agency doctor's notations of dyspepsia as plaintiff primary ailment somehow
24 indicated a lack of thoroughness in reviewing the record.  The State Agency doctor is a "highly
25 qualified" physician with an expertise in "Social Security disability evaluation" and plaintiff has
26 /////

offered no evidence to the contrary. The ALJ's reliance upon his opinion, made after his examination of the entire record, was entirely proper. 20 C.F.R. § 416.927(f)(2)(I).

The ALJ did err in his failure to explain the weight given to the opinion of the State Agency. 20 C.F.R. § 416.927(f)(2)(ii). However, given the fact that the opinion by the State Agency is the sole residual functional assessment in the record from a qualified medical source, this error must be considered harmless. See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.1990) (harmless error analysis applicable in judicial review of social security cases). The ALJ found the same residual functional capacity as the State Agency; it must be presumed he gave the State Agency's opinion great weight.

This presumption finds ample support in the record, the ALJ's decision, and the law. No other medical professional offers any assessment of plaintiff's residual functional capacity. In addition, the ALJ provided substantial evidence to support his conclusion that plaintiff was capable of performing medium work. Furthermore, the ultimate conclusion regarding residual functional capacity is reserved to the Commissioner. 20 C.F.R. § 416.927(e)(2). The ALJ's failure to expressly link his exclusive assessment to the only other medical opinion in the record was harmless.

The ALJ properly assessed the medical evidence in reaching his conclusion that plaintiff was capable of performing medium work. The absence of any significant medical evidence indicating that plaintiff was unable to perform at that level, as well as the opinion of the State Agency doctor supports the ALJ's finding. The ALJ's conclusion was not in error.

c. The ALJ's Assessment of Plaintiff's Credibility was not in Error.

The ALJ found plaintiff to be less than fully credible. In making this finding, the ALJ noted the disparity between plaintiff's complaints and the evidence in the record. This finding was not in error.

Substantial evidence supports the ALJ's conclusion. According to the ALJ, multiple factors undermined plaintiff's credibility. The ALJ noted the disparity between

1  plaintiff's complaints and the objective evidence in the record. AT 592. In addition, the ALJ
2  found the non-medical evidence in the record undermined plaintiff's claim. Id.

3  The ALJ determines whether a disability applicant is credible, and the court defers
4  to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g.,
5  Saelee, 94 F.3d at 522. If credibility is critical, the ALJ must make an explicit credibility finding.
6  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229,
7  1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent
8  reason for the disbelief").

9  In evaluating whether subjective complaints are credible, the ALJ should first
10 consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947
11 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment,
12 the ALJ then may consider the nature of the symptoms alleged, including aggravating factors,
13 medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider:
14 (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent
15 testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a
16 prescribed course of treatment, and (3) the applicant's daily activities. Smolen, 80 F.3d at 1284;
17 see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work
18 records, physician and third party testimony about nature, severity and effect of symptoms, and
19 inconsistencies between testimony and conduct also may be relevant. Light v. Social Security
20 Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly
21 debilitating medical problem may be a valid consideration by the ALJ in determining whether the
22 alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of
23 HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own
24 observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot
25 substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).
26 /////

Without affirmative evidence of malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan, 169 F.3d at 599.

In this case, there exists affirmative evidence of malingering. The Office of the Inspector General (OIG) observed plaintiff for an entire day and found him capable of performing a wide range of physical and mental tasks. After nearly eight hours of observation, an investigator with the OIG saw plaintiff walk, drive, shop, lift, interact with his family, and mow the lawn. AT 762-63. Despite the fact that plaintiff claimed his ailments limited or prevented his ability to perform many of these activities, the investigator noted no pain or discomfort during her observations. AT 764.

The evidence upon which the ALJ relied to assess plaintiff's credibility met the clear and convincing standard. The objective medical evidence in the record does not support the severity of disability alleged by plaintiff. In his initial application for benefits, plaintiff complained of numerous mental impairments as well as physical problems, including chest pain, stomach pain, and a lack of strength. AT 636. Plaintiff testified that his physical problems also included shoulder pain, particularly on the right side, that "really hurt. AT 811.

The ALJ found that the recent and most relevant medical evidence in the record did not support the full extent of plaintiff's alleged impairments. AT 592. In particular, the ALJ found that the record contained few references to plaintiff's dizziness or shoulder pain and the limited number of examinations in the record relating to these complaints were not significant. Id. In addition, the ALJ found a distinct lack of treatment, including prescription medications, therapy, or assistive devices, that might support plaintiff's claims. Id.

During this period of alleged disability, the record shows plaintiff made no fewer than four visits to his physicians to address physical ailments. AT 722, 753-55. In only one of those visits did plaintiff complain of dizziness. AT 722. Furthermore, during the eight trips for mental health treatment documented in the record, plaintiff made no complaints of dizziness. AT 757-58, 795-801. In addition, in spite of his extensive and compelling testimony at the hearing

regarding his post-Vietnam stress, AT 815 ("[my thoughts at night are] about killing each other and the enemy wanting to come back and kill me"), plaintiff complained only once of auditory hallucinations, AT 800, denying them on every other occasion, AT 757-58, 795-97, 801

The record also fails to document any complaints of shoulder pain prior to the hearing.  In addition, the limited medical evidence in the record shows no prescriptions, treatment, restrictions on activity, or physical therapy consistent with any type of physical pain in the shoulder, arms, or abdomen.  An unexplained failure to seek treatment is a sufficient basis upon which to discredit a plaintiff's complaints.  See Fair, 885 F.2d at 603; 20 C.F.R. § 404.1529(c).  Other than his subjective complaints, plaintiff has provided no evidence to counter the absolute lack of objective medical evidence in the record that might support the full extent of his claim.

The lack of objective medical evidence to corroborate plaintiff's subjective complaints, in and of itself, is not a proper basis to discredit plaintiff.  See Smolen, 80 F.3d at 1285.  However, the ALJ is permitted to utilize the ordinary techniques of credibility evaluation, including "other testimony by the plaintiff that appears less than candid."  Id., see also 20 C.F.R. 404.1529, SSR 96-7p.  Numerous inconsistencies between plaintiff's complaints and the evidence in the record cast significant doubt upon plaintiff's credibility.  See Light, 119 F.3d at 792 (holding that conflicts between testimony and conduct, and internal contradictions within the testimony are sufficient bases to discredit subjective complaints).

The evidence provided by plaintiff at his hearing supports the ALJ's conclusion that he is not credible.  Plaintiff testified extensively about his dizziness.  AT 810, 812-13.  In addition, he complained of constant pain.  AT 818.  However, as noted above, only once in the months immediately prior to plaintiff's application did he complain to his doctors of dizziness.  AT 722.  Furthermore, at no point during a day long observation of plaintiff by a fraud investigator was plaintiff seen to be in any distress.  AT 764.  On the contrary, plaintiff engaged in numerous activities of varying degrees of vigor without any sign of dizziness or pain.  AT 764.

15

1          Furthermore, the ALJ noted that plaintiff performed many daily activities that
2   undermined his claims of disability.  Plaintiff testified that he "cannot do anything" and that he
3   was limited to "watching the TV and sometimes sitting outside by the door...[a]nd sometimes
4   when I feel well, I read the Bible."  AT 811.  However, the facts show plaintiff to be anything
5   but a homebound invalid as he was observed driving, shopping, interacting with family, and
6   mowing the lawn.  AT 762-63.
7          This lack of veracity extended beyond plaintiff's complaints of physical and
8   mental symptoms and touched upon his description of his daily activities.  Plaintiff told the ALJ
9   that he never drove to the doctor, AT 809; however, an investigator observed plaintiff driving
10  himself and his wife to medical appointments and shopping, AT 762-63.  Plaintiff was also seen
11  driving to pick up a young child from school.  AT 763.  Plaintiff testified that he had no cars, AT
12  809; however, evidence in the record shows him to be owner of one automobile and part-owner
13  of another, AT 761.
14         Plaintiff's ability to engage in some daily activities does not compromise his
15  subjective complaints of pain.  See Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004);
16  Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); Fair, 885 F.2d at 603 (holding that one
17  need not be "utterly incapacitated" in order to be disabled).  However, the substantial evidence in
18  the record shows that plaintiff is able to spend a considerable part of his day performing activities
19  consistent with those necessary for productive work.  See Morgan, 169 F.3d at 600 (finding
20  plaintiff's ability to fix meals, do laundry and yard work, and occasionally care for a friend's
21  child sufficient to undermine complaints of pain).  The evidence shows plaintiff more than
22  capable of performing the skills necessary to succeed in the workforce.  The ALJ's credibility
23  determination was not in error.
24         The ALJ's determination that plaintiff was not credible was not in error.  The
25  factors considered by the ALJ, including the lack of objective evidence, plaintiff's inconsistent
26  statements, and the relatively extreme vitality of plaintiff's daily activities when compared to his

1 complaints were all valid and supported by the record.  The ALJ's credibility determination was
2 based on permissible grounds and will not be disturbed.

3        The ALJ's decision is fully supported by substantial evidence in the record and
4 based on the proper legal standards.  Accordingly, IT IS HEREBY RECOMMENDED that:

5        1.  Plaintiff's motion for summary judgment or remand be denied, and

6        2.  The Commissioner's cross-motion for summary judgment be granted.

7        These findings and recommendations are submitted to the United States District
8 Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within ten
9 days after being served with these findings and recommendations, any party may file written
10 objections with the court and serve a copy on all parties.  Such a document should be captioned
11 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
12 shall be served and filed within ten days after service of the objections.  The parties are advised
13 that failure to file objections within the specified time may waive the right to appeal the District
14 Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
15 DATED: August 18, 2006.

                            UNITED STATES MAGISTRATE JUDGE

13
Wang.f&r.ss.wpd